UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TARA ANN LINDSEY SCHWAB,

    Plaintiff,

v.                                  Case No: 3:16-cv-325-J-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.[1]

## OPINION AND ORDER

Plaintiff, Tara Ann Lindsey Schwab, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] Nancy A. Berryhill became the Acting Commissioner of the Social Security on January 23, 2017. Pursuant to Fed. R. Civ. P. 25(d)(1), Nancy A. Berryhill is substituted as the defendant in this case.

death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

## B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If

the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff protectively filed applications for DIB and SSI on May 31, 2013. (Tr. 14, 29). Although the Administrative Law Judge ("ALJ") wrote that the claimant alleged a disability onset date of September 1, 2012, Plaintiff alleged a disability onset date of September 9, 2011, in her SSI application, and an onset date of September 1, 2012, in her DIB application. (Tr. 14, 42, 225, 227, 263, 278). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 144-46, 147-49, 157-61, 164-68). Plaintiff requested a hearing and, on September 24, 2015, a hearing was held before ALJ Teresa J. McGarry ("the ALJ"). (Tr. 36-84). On November 4, 2015, the ALJ entered a decision finding that Plaintiff had not been under a disability from September 1, 2012, through the date of the decision. (Tr. 14-35). Plaintiff requested review of the ALJ's decision and, on January 14, 2016, Plaintiff's request for review was denied. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) on March 18, 2016. The case is now ripe for review pursuant to 42 U.S.C. § 405(g).

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2012, the alleged onset date. (Tr. 16). At step two, the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease, bilateral knee osteoarthritis, and obesity. (Tr. 16). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform

> less than light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is capable of: occasionally lifting/carrying twenty pounds; frequently lifting/carrying 10 pounds; standing or walking four hours of an eight hour workday; and sitting six hours of an eight hour workday. She is restricted to occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. She cannot climb ladders/ropes/scaffolds. The claimant should avoid hazards. She cannot lift overhead.

(Tr. 20). At step four, the ALJ relied on the testimony of a vocational expert ("VE") to find that Plaintiff was capable of performing her past relevant work as a customer service representative, data entry clerk, and help desk representative, as this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 28). The ALJ concluded that Plaintiff had not been under a disability from September 1, 2012, the alleged onset date, through the date of the decision, November 4, 2015. (Tr. 28).

### II. Analysis

Plaintiff presents two main arguments on appeal. First, Plaintiff contends that the ALJ erred by according greater weight to the opinions of non-examining physicians than she did to the

opinions of treating physicians. (Doc. 24 p. 10). Second, Plaintiff argues that the ALJ erred because her consideration of Plaintiff's pain and subjective symptoms involved numerous inaccuracies and omissions. (Doc. 24 p. 10). The Court will address Plaintiff's arguments in turn below.

**1) Whether the ALJ erred by according greater weight to the opinions of non-examining physicians than she did to the opinions of treating physicians.**

Plaintiff argues that the ALJ committed numerous errors in his treatment of the medical opinions of record. (Doc. 24 p. 10-21). Specifically, Plaintiff contends that the ALJ erred by giving little weight to the opinions of treating physicians Jaime Revollo, M.D. and Ashraf Andrawis, M.D., while giving greater weight to the opinions of non-examining physicians Jessy Sadovnik, Psy.D. and Robert Whittier, M.D. (Doc. 24 p. 10-21). Defendant contends that the ALJ's evaluation of the medical evidence is supported by substantial evidence. (Doc. 25 p. 5).

As an initial matter, the Court notes that an ALJ does not err merely by according greater weight to the opinions of non-examining physicians than to treating physicians. In evaluating medical opinions, the ALJ considers many factors including the examining relationship, the treatment relationship, whether an opinion is amply supported, whether an opinion is consistent with the record, and a doctor's specialization. *Davison v. Astrue*, 370 F. App'x 995, 996 (11th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)). Usually, the opinions of treating physicians are given more weight than non-treating physicians, and the opinions of examining physicians are given more weight than non-examining physicians. *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 740 (11th Cir. 2011). However, where "good cause" exists to discredit a physician's testimony, an ALJ may give more weight to the opinions of non-examining or non-treating physicians than to the opinions of treating physicians. *See Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (finding that the ALJ did not err in crediting the reports of non-examining, non-treating physicians

where the ALJ provided good cause for not according substantial weight to treating physician's opinion).

Accordingly, the Court must determine whether the ALJ provided good cause for rejecting the opinions of the treating physicians, Dr. Revollo and Dr. Andrawis, and whether substantial evidence supports the ALJ's decision to give great weight to the opinions of Dr. Sadovnik and Dr. Whittier. The Court turns to that determination now.

### a) Dr. Revollo

At step two, the ALJ considered the evidence from Dr. Revollo and explained her decision to give little weight to Dr. Revollo's opinion as follows:

> . . . I give little weight to Dr. Revollo's opinions. I note Dr. Revollo initially found the claimant's mental status examination was completely normal. (Exhibit 16-F). However, by June of 2014, he indicated the claimant was unable to hold a job due to anxiety. (Exhibit 21-F). A decline in the claimant's functioning was not documented in his treatment records during this time and her prescript for Xananx remained unchanged. Dr. Revollo also did not provide statements of how the claimant's mental health impairments affect her daily. She was not referred for formal mental health treatment or counseling. Furthermore, Dr. Revollo's opinion that the claimant's [sic] cannot hold a job is inconsistent with her ability to perform volunteer work at the community center.

(Tr. 18). Later in her decision, while formulating Plaintiff's RFC, the ALJ further explained her reasoning in according little weight to Dr. Revollo's opinions:

> I also give little weight to the limitations and opinions offered by Dr. Revollo. These opinions are not supported by ongoing clinical abnormalities in his progress notes. Dr. Revollo's records largely document the claimant's complaints and a list of diagnoses. He did not order further diagnostic testing to assess her conditions, suggesting they do not rise to the level of severity suggested by his opinion and limitations. In addition, there is no indication Dr. Revollo referred the claimant to specialists for her conditions. Although he indicated the claimant is unable to work due to fibromyalgia, he did not document the presence of tender points. The manipulative limitations assessed by Dr. Revollo are not consistent with is failure to document strength deficits on physical examination.

(Tr. 27).

As discussed above, the opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In this case, the Court finds that the ALJ provided good cause for giving "little weight" to Dr. Revollo's opinions. Dr. Revollo opined Plaintiff had such limitations as never lifting more than 10 pounds, sitting more than 30 minutes at a time, standing more than 15 minutes at a time, walking more than 1 block without rest or severe pain, or sitting, standing, or walking more than 2 hours in an 8-hour day. (Tr. 24-25, 585, 642). He attributed these limitations in part to degenerative joint disease in her knees (Tr. 584) and ruptured cervical discs. (Tr. 741). As Defendant notes, however, the ALJ observed that Dr. Revollo's notes showed few physical abnormalities other than obesity. (Tr. 24-25, 27). Aside from several scatted references to "trace" or barely detectable ("+1") swelling (edema) (Tr. 560, 650-51, 674) and pain or tenderness at times in various locations (Tr. 618 (knees and legs), 647 (multiple joints), 649 (spine and shoulders), 671 (thoracic spine and right shoulder), 674 (back)), the notes state that Plaintiff's musculoskeletal, extremities, and neurological examinations were normal. (Tr. 561, 574-576, 622, 645-46, 648, 649, 652-54, 672-73, 675-77).

These examination findings, spanning from mid-2013 to early-2015, refute Dr. Revollo's opinions of extreme lifting, sitting, standing, and walking limitations due in part to osteoarthritis and ruptured cervical discs. They are also contrary to Dr. Revollo's opinion that Plaintiff had extreme limitations in using her arms, hands, and fingers. (Tr. 27, 586, 643). In fact, Plaintiff told Dr. Andrawis in May 2015 that she could move her hands well and had good grips (Tr. 25, 706), further bolstering the ALJ's decision not to accept Dr. Revollo's opinions.

Dr. Revollo's opinions about Plaintiff's mental limitations were also inconsistent. In July 2013 Dr. Revollo stated Plaintiff did not have a mental impairment that significantly interfered with her functioning (Tr. 17, 565). But just a few months later he issued contradicting opinions: stating Plaintiff could not work due to posttraumatic stress disorder (Tr. 581) and attributing her purported physical limitations in part to anxiety and depression. (Tr. 587).

These latter opinions contradict Dr. Revollo's contemporaneous observations that Plaintiff had normal thought process, good concentration, normal memory, and appropriate behavior. (Tr. 580). Further, they contradict his actual treatment notes, which show no abnormalities on mental status examinations (Tr. 17, 27). Instead, the notes largely repeat Plaintiff's complaints and diagnoses. (Tr. 27).

Plaintiff argues that the ALJ overlooked significant details along with the longevity and frequency of Dr. Revollo's treatment. (Doc. 24 p. 16-17). An ALJ, however, is not required to specifically refer to every piece of evidence in the record, as long as the ALJ's decision adequately considers the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ extensively considered Dr. Revollo's notes and opinions and provided good cause for rejecting his opinions. As noted above, however, substantial evidence "is such relevant evidence as a reasonable person would accept as adequate support to a conclusion" and

"[e]ven if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford*, 363 F.3d at 1158. Substantial evidence supports the ALJ's analysis of Dr. Revollo's opinions.

### b) Dr. Andrawis

The record shows that in June 2015, Dr. Andrawis opined that Plaintiff had various extreme limitations, such as sitting, standing, and walking less than 2 hours in an 8-hour workday, needing to elevate her legs 45 degrees for 3 or 4 hours during an 8-hour workday, and missing more than four days of work per month. (Tr. 666-69).

In her decision, the ALJ reviewed the medical evidence from Dr. Andrawis and accorded little weight to his opinion. The ALJ explained:

> I give little weight to the extreme limitations endorsed by Dr. Andrawis as they are not supported by the relatively benign abnormalities he documented on physical examinations. Although the claimant has some tenderness to palpation, her strength was largely intact and her reflexes are normal. The restricted range of motion noted in the claimant's lumbar spine does not support the sitting, standing, and walk limitations he assessed. Although he indicated the claimant must elevate her legs, his progress notes consistently fail to document edema. Dr. Andrawis has not ordered additional imaging of the spine. Dr. Andrawis' notation that the claimant requires the use of an assistive device is inconsistent with Dr. Revollo's opinion that the claimant only requires knee braces. I also note Dr. Andrawis' limitations are inconsistent with the claimant's statements regarding her activities of daily living including volunteering at the community center. The claimant is able to take public transportation to do so, suggesting her mobility is not as limited as indicated by Dr. Andrawis.

(Tr. 26-27).

Substantial evidence supports the ALJ's determination. As the ALJ noted, Dr. Andrawis' physical examinations and their relatively benign findings did not support his treatment notes. To support his opinion, Dr. Andrawis cites MRIs of Plaintiff's cervical and lumbar spines, but the ALJ observed that Plaintiff's strength was largely intact and reflexes were normal (Tr. 26) and that

Dr. Andrawis' physical observations were largely unchanged from month to month. (Tr. 23). The record shows that Dr. Andrawis repeatedly found that Plaintiff's arms and legs had normal strength in 2012, 2013, 2014, and early 2015. (Tr. 480, 485, 489, 493, 497, 501, 505, 509, 513, 517, 521, 593, 597, 601, 605, 722, 726, 729, 733, 736, 741, 743, 747, 751, 755, 758, 761, 769). Although Dr. Andrawis later found that Plaintiff had diminished arm strength (Tr. 703, 707, 711, 715, 719), the ALJ's RFC finding accounted for these limitations. Further the record supports the statement that Dr. Andrawis's notes do not show that he observed any leg swelling (edema) that would require Plaintiff to elevate her legs. (Tr. 26, 481, 485, 489, 493, 497, 501, 505, 509, 513, 517, 521, 593, 597, 601, 605, 703, 707, 711, 715, 719, 722, 726, 729, 733, 737, 741, 744, 747, 751, 755, 758, 761, 769).

Additionally, the ALJ's determination to accord little weight to Dr. Andrawis' opinion is supported by Plaintiff's activities of daily living, specifically her part-time volunteer work. Plaintiff contends that the ALJ does not accurately describe the extent of the part time activities or acknowledge that Plaintiff's part-time volunteer activates were interrupted by six breaks which equates to a break every 40 minutes. (Doc. 24 p. 12-13). But even if the ALJ had specifically noted that Plaintiff had six breaks, her description of her volunteer work would undermine the extreme limitation findings of Dr. Andrawis who stated she could only sit, stand, or walk for 2 hours in an 8-hour workday.

Plaintiff contends that the ALJ erred by referring to Dr. Andrawis' notes of November 16, 2012 to suggest that Plaintiff had stopped working and planned to return back to school. (Doc. 24 p. 16). In her decision, the ALJ had noted that "on November 16, 2012, the claimant reported she was not working and going back to school." (Tr. 23). Dr. Andrawis' treatment note from that date

provides "[Plaintiff] is not working and she is going to school." (Tr. 512). The ALJ accurately reported what was contained in Dr. Andrawis' notes.

### c) Dr. Sadovnik and Dr. Whittier

The record shows that Dr. Sadovnik reviewed the evidence in November 2013, and opined that Plaintiff's mental impairments were not severe. (Tr. 130-31). Dr. Whittier reviewed the evidence in December 2013 and opined that Plaintiff could perform light work with additional limitations. (Tr. 24, 132-35).

State agency consultants are highly qualified specialists who also are experts in Social Security disability evaluation, and their opinions may be entitled to great weight if the evidence supports them. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p, 1996 WL 374180, at *2 (S.S.A.).

In this case, the Court finds substantial evidence supports the ALJ's decision to give significant weight to Dr. Sadovnik's opinion. (Tr. 18). Dr. Revollo stated in July 2013 that Plaintiff did not have a mental impairment that significantly interfered with her functioning. (Tr. 17, 565). He issued a normal mental status examination in November 2013 (Tr. 580) and stated Plaintiff's anxiety was stable numerous times. (Tr. 617-619, 646, 648, 651, 671, 673, 674).

In addition, substantial evidence supports the ALJ's decision to issue an RFC consistent with Dr. Whittier's opinion (Tr. 26). Dr. Revollo's notes repeatedly show normal musculoskeletal, extremities, and neurological examinations. (Tr. 561, 574-576, 622, 645-46, 648, 649, 652-54, 672-73, 675-77). Dr. Andrawis repeatedly stated during the relevant period that Plaintiff's arms and legs had normal strength (Tr. 480, 485, 489, 493, 497, 501, 505, 509, 513, 517, 521, 593, 597, 601, 605, 722, 726, 729, 733, 736, 741, 743, 747, 751, 755, 758, 761, 769), except for some diminished arm strength in 2015 (Tr. 703, 707, 711, 715, 719). Plaintiff reported she volunteers

at a community center (Tr. 27), helping homeless or unemployed people at church, apparently for 4 hours. (Tr. 290).

Plaintiff argues that the ALJ erred by elevating the opinions of the state agency evaluators over the opinions of treating physicians. (Doc. 24 p. 10-12, 19-21). The Court rejects this argument. If an ALJ has good cause to accord reduced weight to a treating physician's opinion, the ALJ may also rely on reports from non-examining, non-treating physicians so long as the record supports the reports. *See Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). Here, the ALJ provided good cause for rejecting the opinions of Plaintiff's treating physicians and, thus, the ALJ was free to rely on the reports of the state agency evaluators so long as they were supported by the record. As described above, substantial evidence supported the state agency evaluator's opinions.

**2) Whether the ALJ erred because her consideration of Plaintiff's pain and subjective symptoms involved numerous inaccuracies and omissions.**

Plaintiff argues that the ALJ's decision contains numerous inaccuracies and omissions which require the case to be remanded. The Court will Plaintiff's arguments individually below.

**a) Fibromyalgia**

Plaintiff argues that the ALJ erred by failing to find that Plaintiff had the severe impairment of fibromyalgia. (Doc. 24 p. 14). Plaintiff contends that the ALJ improperly discounted the diagnosis of fibromyalgia and its effects because there was no evidence of a tender point examination as required by Social Security Ruling (SSR) 12-2p. Plaintiff contends that the ALJ overlooked the fact that SSR 12-2p became effective in 2012 and the diagnosis of fibromyalgia was given by Reza Taba, M.D. in the first half of 2011. Plaintiff argues that the ALJ improperly rejected Dr. Taba's diagnosis of fibromyalgia on the basis of a normal sedimentation rate and a

negative rheumatoid factor, which are not relevant to the diagnosis of fibromyalgia. (Doc. 24 p. 14-15).

In her decision, the ALJ addressed the progress notes from Dr. Taba as follows:

> Progress notes from rheumatologist, Reza Taba, M.D, from February 21, 2011 indicate the claimant was diagnosed with fibromyalgia. However, there was no evidence of positive tender points on examination as required by SSR 12-2p to establish such a diagnosis. Dr. Taba did note there was no evidence of inflammatory arthritis on examination. In addition, the claimant's rheumatoid factor was negative. Her sedimentation rate, which measures inflammation, was also normal at 10. Dr. Taba prescribed Gabapentin. In April of 2011, mild osteoarthritis was noted in x-rays of her bilateral knees. (Exhibit 7-F).

(Tr. 22).

The Court finds that the ALJ committed no error in her treatment of Plaintiff's alleged severe impairment of fibromyalgia. SSR 12-2p provides that for a claimant to establish a fibromyalgia, a person must have a history of widespread pain in all quadrants of the body and at least 11 of 18 positive tender points on physical examination. SSR 12-2p became effective before the ALJ issued her decision and her analysis pursuant to this ruling was not erroneous, but required. 20 C.F.R. § 402.35(b)(1) (providing that the SSRs published in the Federal Register are "binding on all components of the Social Security Administration"). The ALJ correctly noted that there was no evidence of positive tender points on examination.

### b) Polycystic Ovarian Syndrome

Plaintiff argues that the ALJ's account of the relevant medical history failed to accurately reflect how polycystic ovarian syndrome (PCOS) impaired Plaintiff. (Doc. 24 p. 17). Plaintiff notes that PCOS was confirmed by Dr. Taba (Tr. 387), Dr. Evans (Tr. 411), and was listed as a condition that limited her ability to work in her disability report. (Tr. 262). Plaintiff contends that the ALJ's failure to discuss how PCOS was evaluated or considered is a substantial flaw because

Plaintiff had complained of abdominal pelvic abnormalities to Dr. Revollo on a regular basis. (Doc. 24 p. 18). In response, Defendant argues that Plaintiff has failed to identify any evidence showing anyone diagnosed her with PCOS during the relevant time period. (Doc. 25 p. 17).

Here, the Court finds that the ALJ did not err by failing to address Plaintiff's PCOS. Plaintiff has failed to identify any evidence showing that she was diagnosed with PCOS during the relevant time period. As Defendant notes, the record shows that Plaintiff was diagnosed with PCOS around 2007 (Tr. 410), nearly five years before the relevant period. In 2010, two years before he relevant period, Dr. Evans' diagnosed Plaintiff with a "[history] of PCOS". (Tr. 411). PCOS is listed as a diagnosis on a treatment notes from Dr. Reza dated February and March 2011. (Tr. 385, 387). Further, while Plaintiff contends that PCOS was listed as a condition that limits her ability to work, Plaintiff failed to mention any limitations caused by PCOS during her hearing, even when her attorney asked her to go through all of her physical problems and how they affect her. (Tr. 68-73). Finally, Plaintiff contends that PCOS was recognized as being a current medical condition in the notes from the CVS Minute Clinic. (Tr. 548, 551). This document, however, only shows that Plaintiff reported PCOS as a current condition while seeking treatment for ear pain, nasal congestion, postnasal discharge, sinus pressure, sore throat, cough, and fever. (Tr. 548).

While some of Dr. Revollo's progress notes during the relevant period indicate abdominal and pelvic abnormalities, Dr. Revollo never attributed these abnormalities to PCOS and never diagnosed Plaintiff with the condition. (Tr. 559-64, 574-76, 618, 645-54, 671-77). Likewise, treating physician Dr. Andrawis never diagnosed Plaintiff with PCOS.

However, even if the record contained evidence of a diagnosis of PCOS during the relevant time period, this fact would not require the Court to remand the case. A diagnosis or mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient,

instead, the claimant must show the effect of the impairment on her ability to work. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (citing *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir.1986)). Plaintiff has failed to show how her PCOS makes her limited than the ALJ found in his RFC. Accordingly, the Court rejects Plaintiff's arguments that remand is necessary for the ALJ to discuss specifically Plaintiff's PCOS.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 20, 2017.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties